# CHARLESTON.

## WOODS *v.* COTTRELL.

### Submitted March 9, 1904—Decided March 29, 1904.

1.  GAMBLING DEVICES—*Constable—Prohibition.*
    A justice who issues a warrant to arrest a party for keeping a slot machine as a gaming table, and to seize the same, and who on hearing requires the accused to give recognizance to appear before the criminal or circuit court to answer the charge, and orders the constable to turn over to the clerk of such court the slot machine to abide its order, is acting within his jurisdiction, and a writ of prohibition will not lie against him and the constable to restrain them from executing such order, nor against such clerk to prohibit his retaining the machine until such court act upon it. (p. 481.)

2.  GAMING TABLE—*Seizure—Police Power—Constitutional Law.*
    Section 1 of chapter 151 of the Code of 1899, in authorizing the seizure of gaming tables or instruments covered by it, is not unconstitutional as depriving a person of property without due process of law. (p. 481.)

3.  GAMING TABLE—*Seizure.*
    When gaming tables are seized under a warrant from a justice under Code 1899, chapter 151, section 1, the justice cannot order them to be burnt. That can be done only upon conviction of their owner upon the charge of keeping them, in a criminal or circuit court, and under its order. (p. 481.)

4.  PUBLIC NUISANCE.
      Public nuisance—power to destroy things constituting it.   (p.
    482.)

Error to Circuit Court, Kanawha County.

Proceedings by Gibby Woods against Joel Cottrell, Justice, and others, for writ of prohibition.   Judgment for defendants, and plaintiff brings error.

*Affirmed.*

J. W. KENNEDY, CORNWELL & CORNWELL, JOHN H. HOLT, JOHN BASSEL, and M. G. SPERRY, for plaintiff in error.

S. B. AVIS, Prosecuting Attorney, for defendants in error.

BRANNON, JUDGE:

A justice of Kanawha county issued a warrant requiring the arrest of Gibby Woods charging that he kept and exhibited "a gaming table, called an A B C table and E O table and faro bank and keno table and table of like kind, under the denomination of slot machine." The warrant required the constable to arrest Woods and bring him before the justice to answer the charge, and also to seize the slot machine and any money staked and exhibited to allure persons to bet at such table or bank, and under it the constable arrested Woods and seized the slot machine, and upon hearing Woods was required to give bond for his appearance before the criminal court to answer the charge, and the slot machine was by the justice's order turned over to the clerk of the criminal court to await its action as to the machine. Two days after the justice's action Woods obtained from the circuit court a rule against the justice, the constable and the clerk of the criminal court to appear and show cause why writ of prohibition should not go to prohibit them from proceeding upon the said order of the justice "and commanding them no further to hold said slot machine from said petitioner." Upon hearing the court discharged the rule, and Woods sued out a writ of error from this Court.

At once the question thrusts itself upon us, Does prohibition lie in this case? No one can question that a justice has jurisdiction to issue a warrant to begin a prosecution for keeping gaming tables under Code 1899, chapter 151, section 1. Say that he erred in deciding that a slot machine is a table, an instrument

of gaming, under that statute; it is only an error of judgment within the pale of a lawful jurisdiction; it is not an usurpation of jurisdiction, but mere erroneous decision in a case lawfully before him. The law commanded him to consider and decide whether or not keeping a slot machine was an offense under that statute; he did only what the law required of him, he decided that question.   Prohibition lies only where there is "usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or having such jurisdiction, exceeds its legitimate powers." Code, chapter 110, section 1; *Haldeman* v. *Davis,* 28 W. Va. 324; *County Court* v. *Boreman,* 34 *Id.* 362.  It was argued at the bar that the Code just cited says that the writ lies as "matter of right." So it does in those cases where it does lie; but those words do not define the cases where it lies, but were inserted only to say that in cases proper for the writ it should be demandable of right, instead of resting in the discretion of the court, as before that enactment.  For such error in mere judgment the law provides another remedy. *West* v. *Lawson,* 40 W. Va. 480. If indicted, the criminal court, then the circuit court, then the supreme court—all in the due course of law; and this is another reason against prohibition.  A bold proposition it is to say that when a justice sends out a warrant for a criminal act for which the law gives him power to issue it, a prohibition lies even where the act does not constitute an offense.  Can the question whether it is an offense be tested by prohibition? It is not a criminal writ.  Can the usual criminal procedure be arrested and frustrated by this writ?  Surely not  To so hold would palsy the vigor of criminal process.  Everybody would be asking a prohibition when a warrant is sued out against him.  We decline to set such a precedent, and decide the merits without regard to the question of the propiety of thus using the writ, and thus be understood as holding that prohibition can be so used, even though the parties consent, as we do not think that consent can give the writ a function not given it by law. See dissenting opinion in *State* v. *Godfrey,* (46 S. E. 185), 54 W. Va. *54.*

　　Another reason why the writ does not lie, so far as it seeks to restrain the action of the justice, is, that he had already acted.  When he sent Woods on to the criminal court he was

*functus officio,* the matter was that instant in the criminal
court. "Prohibition does not lie to restrain an inferior court
after the judgment has been given and fully executed." *Hal-
deman* v. *Davis,* 28 W. Va. 324.

Next as to whether the writ can go to operate upon the con-
stable and clerk. As to the constable: We are to presume that
for prohibition was not presented until 9th December, the con-
stable had already lost custody of the slot machine. It does
not appear to the reverse. Where after judgment prohibition is
asked to restrain its execution, as may under some circum-
stances be done, it must appear that execution has not been
done; but in this case it does not so appear. *City* v. *Beller,*
45 W. Va. 44; *Wilkinson* v. *Hoke;* 39 *Id* p. 405; *Bodley* v.
*Archibald,* 33 *Id.* 229. And the constable is not a judicial offi-
cer, nor is the clerk, and prohibition is only to judicial tribu-
nals.

As to clerk, the rule proposes that the writ shall command
him "no further to hold said slot machine from the petitioner;"
that is, that he surrender it to Woods; it can have no other sig-
nificance. It would be worthless otherwise. This makes the
writ an action of *detinue,* a function which it cannot perform.
If the order of the justice were void, as it is not, or if that
feature touching the machine were void, it could be so held in
an action of *detinue,* which would be the proper process. Pro-
hibition does not lie where other plain remedy exists. But aside
from the last consideration, the statute gives authority to seize,
under the warrant of the justice, a gaming table or faro bank,
and the power to burn it, and within this would be included the
power to hold it as evidence in furtherance of the prosecution
originating with the warrant, and to answer final judgment of
its condemnation. Now, this seizure is thus under color of stat-
ute authority and jurisdiction, not without jurisdiction, not an
excess or abuse of jurisdiction, but within the very letter of the
jurisdiction given by the statute. The arrest, holding the ac-
cused to answer in court and seizure of the instrument, thus
preventing its use in gaming until trial and judgment—all
these are under color and justification of the authority or jur-
isdiction given by the statute. To sustain a jurisdiction wide
enough to justify not only the issue of the warrant and hold the

accused to answer an indictment, but also the seizure of the slot machine, is not to assert a power in the justice to burn the machine. We do not think he has that power. This warrant was issued under a statute which does not give the justice power to hear and determine final judgment. His only power is to determine whether there is probable cause to hold the party to answer in the trial court. We can not cut his power into separate pieces, and say that whilst he can not try the guilt of the accused and impose punishment, yet he can pass judgment that the machine be burnt. We think that whether the machine shall be burnt or released depends on whether the accused is guilty. If not guilty, he is not himself to be punished, neither is the machine to be burnt, and as only the trial court can determine his guilt, so only it can condemn the machine to be burnt. If the party is guilty, destruction of the machine follows the ascertainment of his guilt; if acquitted, judgment of restitution to him of his property follows. Though the thing be plainly an instrument of gaming under the statute, yet if its owner be acquitted of using it for that purpose, it can not be destroyed, as it is only instruments actually used and kept for gaming that are thus condemned to destruction.

It is argued that only after trial by a jury and conviction of the accused can the gaming table be seized. This cannot be so. It is designed to take from the accused the gaming instrument, and stop its use until trial. It goes along with the accused to share his fate.

It is argued that there is no authority to turn over to the court as evidence the slot machine, and that that part of the justice's order is an excess and abuse of his power, and warrants prohibition, as the statute gives only power to burn. We have just said that the statute does not contemplate a burning by order of the justice, and this would justify the commitment of the slot machine to the custody of the criminal court to abide its order, so that it may have possession and execute its judgment of burning.

The justice had jurisdiction under the statute to decide whether there was probable cause to charge the accused. Surely that cannot be doubted. It is plain too, that he had power to retain the machine as evidence, and also to answer judgment of condemnation of it. The general law justifies not

merely seizure of articles admissible as evidence, but even search of the person charged in order to get evidence. State necessity calls for it. 1 Bishop Crim. Proced. section 210; Hughes, Crim. Proced. section 3132. The above considerations based on only section 1, chapter 151, besides general law, to show that the justice had jurisdiction to seize and provide for the retention of the article, may be strongly supplemented by Code, chapter 155 allowing warrants to search premises to find gaming implements, as it gives power to the justice to issue search warrants, and allows seizure, and directs that the article be safely kept by direction of the justice to be used as evidence and then in some cases burnt. The law thus plainly gave the justice jurisdiction to do all he did in this case. (*Boyd* v. *U. S.*, 116 U. S. 616, is a valuable case as to limit of right of search where it is illegal or compels one to furnish evidence against himself.)

Thus, we see clearly that the justice had jurisdiction. It is proposed to make the civil writ of prohibition review and reverse his action for supposed error, as if it were appellate process. Prohibition has no such office. *County Court* v. *Boreman,* 34 W. Va. 362. The case of *State* v. *Godfrey,* (46 S. E. 185), 54 W. Va. *54,* does not conflict with this case, because the town ordinance under which the warrant issued was void, there was no jurisdiction.

It is said that the statute in authorizing the seizure and withholding of a gaming table is a violation of the constitution, as it takes property without due process. This argument goes upon the theory, in part at least, that it is the justice who commands the burning of the gaming table. It may be that if such were the construction of the statute, trial before the justice would be due process. *Laidley* v. *Land Co.,* 159 U. S. 103. But we hold that it is only the trial court after conviction, that can order such burning, and it cannot be intimated that this is not due process.

It cannot be maintained that the clause of the statute authorizing the seizure and burning a gaming table is unconstitutional. Mere gaming is not, at common law, an offense, but only by statute; but keeping a gaming house is a public nuisance by common law. 14 Am. & Eng. Ency. L. (2 ed.) 666; 1 Wood on Nuisance, section 45. It is law very ancient that upon an

indictment for maintaining a public nuisance not only may the offender be punished, but the nuisance may be abated as part of the judgment, and the thing with which the nuisance is done may be destroyed. 1 Am. & Eng. Ency. L. (2 ed.) 78; 2 Wood on Nuisance, section 864. This is a governmental power, existing under that vast power called the "police power." It is coeval with government. Under it all criminal law finds its warrant. 1 McClain, Crim. L. section 23. We cannot believe that it was the design of the state constitution or of the 14th amendment to the national constitution, in declaring that no one shall be deprived of property without due process of law, to enervate and emasculate government of powers so essential, and deeply rooted in the social fabric long before the adoption of American constitutions. They effect no repeal of such inherent common law powers. *In re Converse,* 137 U. S. 624; *State* v. *Sponagle,* 45 W. Va. 415; 25 Am. & Eng. Ency. L. (2 ed.) 146. So, the established law of public nuisance and remedy will warrant the seizure and detention and custody of the machine by the criminal court, as evidence, and to execute its judgment. In fact, this confiscation of the table is a part of the punishment, just as are the fine and imprisonment. Of course, the constitutions do not debar the Legislature from fixing punishment Bishop Stat. Crimes, section 993. The old common law confiscated the felon's property. That general forfeiture of the common law, as a mere sequence of conviction, cannot be enacted in this state because of our bill of rights saying, "No conviction shall work corruption of blood or forfeiture of estate." This abolishes power to declare a forfeiture as a legal consequence of conviction; but it does not inhibit a provision, like that in the gaming act, forfeiting the particular thing working the mischief, the instrument of the nuisance or offense. The legislature may devest property in that particular thing. "Forfeitures of specific articles * * * are a species of fine, resting on the same principle as a sentence to pay a sum of money. We have no general practice of imposing this sort of forfeiture, but it is sometimes done under the direction of a statute." Bishop's New Cr. L. section 944. The legislature may determine when that which is otherwise property shall cease to be such, if kept against law. It is subject to police power. *Train* v. *Boston*

*Co.,* 59 Am. R. 113; 20 L. R. A. 52; *People* v. *Budd,* 15 Am.
St. R. 460. In *Lawton* v. *Steele,* 140 U. S. 133, a state act
authorizing private individuals and certain officers to destroy
fish nets was held a lawful exercise of police power and not to
deprive persons of property without due process. In some states
are statutes confiscating intoxicating liquors kept for sale con-
trary to law, and authorizing their seizure. In *Fisher* v. *Mc-
Girr,* 61 Am. D. 381, it is held that "the Legislature may de-
clare possesion of certain property to be unlawful, where such
property would be dangerous, injurious or noxious and may by
due process of law, by proceeding *in rem,* provided for the
abatement of the nuisance, and the punishment of the offender,
by the seizure and confiscation of the property, by the removal,
sale, or destruction of the noxious articles." The supreme
court has held in *Mugler* v. *Kansas,* 123 U. S. 623, that "the
destruction in the exercise of the police power of the state of
property used in violation of law, in maintaining a public nuis-
ance, is not a taking of property for public use, and does
not deprive the owner of it without due process of law." It
held that the state had constitutional power to declare any
place kept for illegal manufacture or sale of liquors a public
nuisance, and abate it, and at the same time provide for the
trial of the offender. An Iowa statute provided that if the exist-
ence of a nuisance is established by trial, it should be abated
by the judgment by seizing and destroying the liquor, and that
the fixtures and furniture used on the premises for manufacture
or sale of liquor should be removed and sold. It was argued
that the seizure and destruction of the liquor and removal and
sale of the fixtures was contrary to the 14th amendment; that
this could not be done by legislative enactment, whereas this
legislation forfeited the property; that forfeiture must be by
action against the thing, and that in a criminal prosecution the
property is not involved, as is contended in this case, and that
the defendant was entitled to his day in court upon the for-
feiture of the property. The court said, what we say, that
property cannot be forfeited by a legislative act but only by
judgment of a court after notice, that the statute did not for-
feit property by legislative enactments, but as in many other
instances, authorizes the courts, in cases where it hase been
established on judicial investigation that the property is such,

or has been so used as to be a nuisance, to abate it by destroying and selling the property. It said that in actions wherein the existence of the nuisance is established under the law in question, the action is against the thing—the place—as well as against the person. In either case the question of whether the place was a nuisance, and if so whether the person was engaged in keeping it. The court said that as the proceedings is against person and thing both, the person has due notice, and his day in court to defend against forfeiture as also to defend himself. Just so in this case. *Craig* v. *Werlhmuller,* 78 Iowa 598. Where one has his day in court and regular trial that is due process. *Laidley* v. *Land Co.,* 159 U. S. 103. Such anti-liquor laws forfeiting property have been frequently sustained. Black on Intox. Liquors, section 54; *Preston* v. *Drew,* 54 Am. D. 639; Bishop on Stat. Crimes, sections 993, 994.

We conclude that the statute in question is valid both as to the person proceeded against and the implements used for gaming.

The question whether a slot machine is an instrument of gaming within the meaning of section 1, chapter 151, Code, was fully and ably argued orally and in briefs, and this Court is as well prepared to decide it now as it likely ever will be, though strictly it is not proper to decide it, as prohibition does not lie. As it was stated in argument that indictments are pending in some counties against persons for keeping slot machines, and that those using them want to know whether they are violating the law or not, some of the members of the Court favor expressing our opinion upon it; but some members objecting, we do not consider the question in this opinion.

We affirm the judgment discharging the rule.

*Affirmed.*