GATES v. COUNCIL OF CITY OF
HUNTINGTON et al.

No. 579.

United States District Court
S. D. West Virginia, Huntington Division.

Nov. 6, 1950.

758

Philip H. Marcum, Huntington, W. Va., for plaintiff.

Peter H. Baer, Huntington, W. Va., and Benjamin Freidson, Washington, D. C., for the United States.

H. L. Ducker, Huntington, W. Va., for Council of City of Huntington.

WATKINS, District Judge.

Plaintiff filed a "Petition for Writ of Prohibition" in the Circuit Court of Cabell County, West Virginia, seeking to restrain "The Council of the City of Huntington" from making a finding that a shortage of rental housing accommodations exists in the City of Huntington requiring the continuation of federal rent control, pursuant to the provisions of Section 204(f) (1) (A) of the Housing and Rent Act of 1950, 50

U.S.C.A.Appendix, § 1894(f) (1) (A), providing in part as follows:

"(f) (1) The provisions of this title, except section 204(a), shall cease to be in effect at the close of December 31, 1950, except that they shall cease to be in effect at the close of June 30, 1951—

"(A) in any incorporated city, town, or village which, at a time when maximum rents under this title are in effect therein, and prior to December 31, 1950, declares (by resolution of its governing body adopted for that purpose, or by popular referendum, in accordance with local law) that a shortage of rental housing accommodations exists which requires the continuance of rent control in such city, town, or village".

Plaintiff alleges that the council determined to hold a public hearing on September 28, 1950, for the purpose of determining whether a shortage of rental housing accommodations exists in Huntington so as to require the continuation of federal rent control; that, as plaintiff verily believes, the council will make such a finding at the hearing, and that such a finding is not within the express or implied power of the council under its charter; and that plaintiff, "as a citizen, property owner and taxpayer * * * has the right to demand" that the council refrain from so acting. Upon the filing of such petition on September 28, 1950, the state court issued a rule to show cause against the council, returnable October 14, 1950, and staying all further proceedings by the council. The state court permitted the United States to intervene as a party defendant, whereupon the United States petitioned this court for removal of the cause and participation of defendant. Plaintiff has moved to remand the case to the state court; the council has appeared specially and moved to quash the rule, together with service thereon, and the United States has moved to dismiss the action.

The motion to remand must be denied. Congress has legislated on rent control since 1942 and its authority to do so is no longer questioned. United States v. Shore-

line Cooperative Apartments, Inc., 338 U.S. 897, 70 S.Ct. 248, rehearing denied 338 U.S. 939, 70 S.Ct. 343; Woods v. Cloyd W. Miller Co., 333 U.S. 138, 68 S.Ct. 421. Plaintiff does not question the authority of Congress to continue rent control after December 31, 1950, until June 30, 1951.

In order to terminate rent control at the earliest date possible in each community, Congress authorized the governing body of each city to determine whether a shortage of rental accommodations exists which requires rent control.[1] Had Congress not so acted the city would have had no right to determine whether a shortage of rental housing accommodations existed. The city was thereby authorized by Congress to participate with the United States in the fulfillment of Congressional intent. Such combined action is not new to the legislative process. Bowles v. Willingham, 321 U.S. 503, 515, 64 S.Ct. 641, 88 L.Ed. 892. The right of the council to proceed in its consideration of the problem of rent control arises under this law of the United States. Plaintiff contends that since the city council was not authorized, specifically or impliedly, to act with respect to rent control, the federal statute cannot give the council any such authority. It is clear that the construction of the federal law is brought into question, and the United States District Court is the proper forum for such litigation.

The motion of city council to quash the rule, together with service thereon, must be sustained. The council is not a legal entity but is merely a body composed of a mayor and councilmen vested with certain corporate powers, and has no capacity to sue or be sued. The individual members of the council may sue and be sued, and the same is true as to the City of Huntington, a municipal corporation. The petition is fatally defective for want of a proper party defendant, and the attempted service upon the council, as distinguished from the individual members thereof, is fatally defective and void.

1. In her complaint, plaintiff alleges that the defendant council is the "governing body of said city, and all of the corporate powers of the city of Huntington are vested in and exercised by said council".

The motion of the United States to dismiss the petition for writ of prohibition must be sustained for several reasons.

■ In the first place this court does not have jurisdiction to grant the relief asked. The action of the council in determining the need for rent control, or the lack of it, is a legislative act, as distinguished from a judicial or quasi-judicial act. See Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150, where Justice Holmes said: "A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation, on the other hand, looks to the future and changes existing conditions by making a new rule, to be applied thereafter to all or some part of those subject to its power. The establishment of a rate is the making of a rule for the future, and therefore is an act legislative, not judicial, in kind * * *."

■ Under the Housing and Rent Act of 1950, the city council may determine whether a shortage of rental housing accommodations exists such as to require the continuance of rent control from January 1 to June 30, 1951. Consideration of the need of rent control for this future period is clearly "the making of a rule for the future" and is therefore in the nature of a legislative act. The courts do not have the power to control the legislative process. Under the principles of balance of power between the Legislative, Executive and Judicial departments, the courts have no power to control the legislative bodies in the initial stages of proposed legislation. As was said by Justice Holmes in Prentis v. Atlantic Coast Line, supra, "Litigation cannot arise until the moment of legislation is past." 211 U.S. at page 228, 29 S.Ct. at page 70. After the legislative body has acted, then the courts may consider the validity of such legislation. The evil of any other rule is well illustrated by what has already happened in this case. Here one citizen of the community has succeeded in restraining the city council from even considering the matter of rent control, a matter of great public interest in the community, and seeks to permanently enjoin it from so doing. The moment of legislation has not been reached. The effect of such a restraining order is to stop the thought processes of the governing body, since the petition points out that the council has not even convened to consider the matter. Plaintiff seeks to make it impossible for the people of the community to express their views.

■ Secondly, the action is premature. Plaintiff claims that the council proposes to hold a public hearing, and as she believes, will adopt a resolution of a particular character. The federal statute provides that the declaration as to need for rent control may be made either by resolution of the governing body or by popular referendum. Neither course has yet been followed, and for all that appears in the petition, any such permissive action may never be taken. The injunctive relief sought may be entirely unnecessary. In fact, the council might declare there was no need for rent control after December 31, 1950, if it had a public hearing to consider the matter.

■ Third, the petition does not show that plaintiff has a legally protected interest. She does not allege ownership of rental property, but says only that she is a "citizen, property owner and taxpayer". No threat to any right or interest that she may own is alleged. No injury, actual or threatened, is alleged to justify equitable relief. She claims only a common concern for obedience to law, which belongs equally to all.

■ Fourth, the federal statute does not give plaintiff the right of judicial review to the finding of the governing body of a city as to the need for rent control. So long as the city council keeps within its authority to determine whether such shortage of rental housing accommodations exists, and its finding is not arbitrary or capricious, they are beyond the control of the courts. The Act is wholly silent on any right of judicial review to the finding of the governing body of a city relating to the need for rent control. It would seem clear that Congress intended to leave the matter

of need for continued rent control entirely to the community, to be expressed either by resolution of its governing body or by popular referendum. The remedy for displeasure of the action of the governing body of a city is at the polls and not in the courts. Any action by the communities must be taken prior to December 1, 1950 to be effective. A right to judicial review under this short-term provision would tend to defeat the intent of Congress in giving the exclusive right to the community to determine the need for rent control between January 1, 1950 and June 30, 1951. This is best illustrated in this case where one person has succeeded in restraining the council from even considering the matter since September 28, 1950. The Act is a war measure and must be enforced with promptitude.

Fifth, the extraordinary equitable remedy of writ of prohibition will not lie to the action of a legislative body. The writ issues only to an inferior court and goes only to judicial tribunals or those exercising judicial functions. West Virginia Code, Sec. 5299; Bloxton v. McWhorter, 46 W.Va. 32, 32 S.E. 1004; Woods v. Cottrell, 55 W.Va. 476, 47 S.E. 275; White v. Roane County Court, 99 W.Va. 504, 129 S. E. 401; Langfitt v. Doddridge County Court, 86 W.Va. 316, 103 S.E. 105; Smith v. Whitney, 116 U.S. 167, 175, 6 S.Ct. 570, 29 L.Ed. 601; Poliszek v. Doak, 61 App. D.C. 64, 57 F.2d 430.

Sixth, the plaintiff has an adequate remedy at law. She will have an opportunity to challenge the validity of any action which might be taken by the city council, if and when it is effective, in a proper forum and in a proper case. The writ will never issue where there is an adequate remedy at law. Poliszek v. Doak, supra.

No city council is given specific authority by its charter to consider the matter of rent control. Any action must necessarily be outside its expressed power. Congress has provided the substantive standard for the city council—whether "a shortage of rental housing accommodations exists"—and thereby endeavored to avoid any question of unconstitutional delegation of authority. No question of constitutionality of the act is here raised. When Congress acts on a matter within its constitutional authority, such action becomes a part of state policy in the same manner as if the state legislature had itself enacted the same kind of law. The courts have held that neither the silence of local law nor policy or rule to the contrary can serve to defeat the will of Congress. Testa v. Katt, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967; Brown v. Wright, 4 Cir., 137 F.2d 484; Case v. Bowles, 327 U.S. 92, 66 S.Ct. 438, 90 L.Ed. 552; United States v. Bakins, 304 U.S. 27, 58 S.Ct. 811, 82 L.Ed. 1137. An examination of the Act of the Legislature of West Virginia, Acts, 1933, 2d Extraordinary Session, Chapter 161, which sets forth the Charter of the City of Huntington, and Chapter 8, Article IV, Section 10, West Virginia Code, shows that the City Council of Huntington has been given broad powers to pass such "ordinance or resolution as the case may require (so far as such power or authority is not in conflict with the Constitution and laws of this State or the constitution of the United States) * * *".

In plaintiff's motion to remand she questions the right of the attorneys whose names appear upon the petition for removal to sign the same as attorneys for the United States, upon the theory that attorneys for the Housing Expediter have not been given authority to appear for the United States in cases of this kind. She admits that such authority has been given to appear in cases arising under Section 205 and 206 of the Act, 50 U.S.C.A.Appendix, §§ 1895, 1896, but says that this is not a case under either Section 205 or 206. There is no merit in this contention. The delegation of authority from the Attorney General dated September 24, 1949, is not limited to Sections 205 and 206 of the Act, but gives attorneys appointed by the Housing Expediter authority "to defend the United States, * * * in any case arising under the act * * *". 14 Fed.Register 6907.

An order has been entered in accordance with this opinion.