upon the mortgaged property at Coney Island, in the county of Kings, took possession of the property, appointed one R. tax keeper thereof, and took a receipt from one Nellie Condon, that she would hold the property subject to the defendant's orders. The plaintiff then brought the present action to recover possession of the property, and delivered a requisition in replevin to one Louis Levy, also a marshal appointed for the borough of Manhattan, to execute the writ. The defendant never turned the property over to Levy, and the latter never obtained possession of it. The defendant gave Mr. Levy the receipt Miss Condon had previously signed and given to the defendant, but this in no manner aided Levy in getting the property, and he never in fact gained possession of it. Indeed, according to Tausend v. Handlear, 33 Misc. Rep. 587, 68 N. Y. Supp. 77, neither marshal had power to perform any official function in Kings county; so that all the defendant did there in the way of taking and retaining possession of the property was tortiously done, and conferred no rights whatever either upon him or the judgment creditor he assumed to represent. Levy accomplished nothing, and what he assumed to do, beyond serving the papers herein, is of no account whatever. This view makes it unnecessary for us to consider the effect of section 1403 of the Code of Civil Procedure as to when the property of the judgment debtor becomes bound by an execution delivered to an officer; for, if the marshal has no power to act in Kings county, property not within his jurisdiction was clearly not bound by it. The cause was finally submitted to the justice without any objection whatever from the defendant as to the sufficiency of the plaintiff's proofs, and the justice thereafter filed the following decision:

"Judgment that defendant is in possession of the property described in the complaint, and that he is entitled to such possession until the amount of his special property therein, amounting to the sum of $154.29, be satisfied, with $10 costs against plaintiff."

This judgment was wholly unauthorized, as the defendant never acquired any lien, right of possession, or special property in the subject-matter of the action, and it must be reversed, and a new trial ordered, on the appeal taken by the plaintiff, with costs to the appellant to abide the event.

The appeal taken by the defendant must, under the circumstances, be dismissed, with $10 costs. All concur.

On plaintiff's appeal, judgment reversed, and new trial ordered, with costs to appellant to abide event. Defendant's appeal dismissed, with $10 costs.

---

(36 Misc. Rep. 546.)

### OPPENHEIMER v. LALOR.

(Supreme Court, Appellate Term. December, 1901.)

1. REPLEVIN—GAMBLING TOOLS.

Where, in an action to replevy gaming apparatus seized in a raid on an alleged gambling house, and held as evidence for the prosecution, or for destruction, it is shown that the apparatus was suitable for and had been used for gaming, a judgment in favor of the owner will be set aside, as against the weight of evidence.

**2.** POLICE POWER—SEIZURE OF GAMBLING TOOLS.

It is a proper exercise of the police power, under due process of law, to hold possession for a time of gaming implements needed in the prosecution of persons charged with gaming, or in order to destroy them, where the rights of ownership have been forfeited by use for a purpose denounced by statute as a public nuisance.

Appeal from municipal court of New York, borough of Manhattan, Eighth district.

Action by Robert Oppenheimer against Andrew J. Lalor, property clerk of the city of New York, to recover chattels. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before McADAM, P. J., and MacLEAN and SCOTT, JJ.

John Whalen, Corp. Counsel (Terence Farley, of counsel), for appellant.

Jones Cochrane, for respondent.

MacLEAN, J.  In this action to replevin from the defendant, the property clerk of the police department of the city of New York, two roulette wheels, two roulette tables, four table legs, and two crossbars, the plaintiff testified that on the 15th of January, 1901, he bought the articles, then on the ground floor of 109 West Thirty-First street, packed them into a couple of large cases, and had them taken to the third floor, and put into a closet, which he locked and took away the key. He had never been at No. 109 before that day. He did not go there again till, seeing in the papers on February 27th that there had been a raid on the premises the night before, he went to look after his wheels. He found the closet had been broken open as with a chisel, and that the boxes and wheels were gone. Repairing to the central office of police he learned that they were in the possession of the defendant, who refused to give them up upon demand. This property was adapted to gaming purposes, the plaintiff said, but he had never used it nor authorized any one so to use it or known of any one so using it. It is contended for the defense that both the taking and the detention were lawful, under the statutes authorizing and requiring, upon arrests for gaming, the seizure of all implements of gaming or any apparatus suitable for gaming purposes found in the possession or under the control of the person arrested, with the direction that such articles are to be brought to the property clerk, or to be delivered to the magistrate for destruction, or for delivery, as the interests of justice in the magistrate's opinion may require, to the district attorney, for whom the property clerk is customarily the custodian. For the defense it was shown that, on the night of the raid spoken of by the plaintiff, two men were arrested upon warrants issued upon information furnished by two persons who testified they played roulette on two roulette tables at No. 109 on the 6th and 13th of February, one of the arrested men then acting as croupier, that two tables were taken by the police on the night of the raid from the room where the playing had been, and that no closet was broken open or anything taken from a closet. One witness, whose testimony was not shaken or contradicted, positively and directly identi-

fied these tables and appurtenances as the ones sought to be replevied. The other witness saw the wheels at the station house; they were just the same as the night he played; they seemed to be the same, but he would not undertake to swear positively they were the same. The prisoners were held by the magistrate to await the action of the grand jury. The property seized was ordered delivered to the district attorney, to be held pending the determination of the proceedings against the accused.

The trial justice, being of opinion that the identification is not based upon any satisfactory or sufficient grounds, has found, in effect, that the wheels, examined at the station house and seen in use at the premises 109 West Thirty-First street, were not the wheels belonging to the plaintiff, and which he here seeks to recover; that these were never used for gambling, or were never in the possession of the prisoners arrested and subsequently held; and, therefore, rendered a judgment for the recovery of the property claimed. Serious consideration is always to be given to findings of fact by a justice who has heard and seen the witnesses. Here his finding and conclusions are against the weight of evidence and against the law. If the apparatus brought by the police to the station house, and there examined, was the same as that in use for gambling, but still not that sought to be replevied by the plaintiff, what became of his wheels, if he ever had any? Except as to that taken by the raid, he has not traced anything into the hands of the property clerk. It is not to be gravely doubted on the evidence that the tables and wheels used on the 6th and 13th of February are the very ones taken on the raid and delivered into the defendant's custody. The positive and clear testimony to their identity, given by the witness who was not contradicted or impeached, is not to be disregarded. That of his fellow visitor substantially supports his account. Both are corroborated by the other facts and incidents and circumstances which bear them out, but which in turn discredit the plaintiff's story, borne down almost to breaking by its own improbability. Whosoever had the legal title to the apparatus used for gambling by the men arrested, their use for such was the possession and control contemplated by the statute, requiring its seizure and retention for the purpose of evidence on the trial of the accused and for eventual destruction or return according as the arrested person may be convicted or discharged.

Interference in the public behalf with private ownership is more familiar in proceedings to forefend disease or contagion, but it is none the less a proper exercise of the police power, under due process of law, to cause individuals to forego for a time enjoyment in possession of articles needed for the prosecution of persons charged with crime, or even to confiscate and destroy things, otherwise private property, in which the rights of ownership have been forfeited by use in or devotion to a purpose pronounced by a statute a public nuisance.

Judgment reversed, and new trial ordered, with costs to appellant to abide event. All concur.