## THE STATE OF INDIANA *v.* DERRY.

### [No. 21,164.   Filed October 7, 1908.]

1. CRIMINAL LAW. — *Search-Warrants.* — *Gaming Devices.* — *Destruction of.—Petition for.—Justices of the Peace.*—Where a justice of the peace issues a search-warrant, and gaming devices are seized thereunder and turned over to the sheriff, such justice has power to determine whether such devices were used for gaming purposes and to order them destroyed, without any formal petition therefor.   p. 20.
2. CONSTITUTIONAL LAW.—*Destruction of Property.—Due Process.* —The owner of articles which cannot lawfully be used as property has no constitutional right to a hearing before the destruction thereof.   p. 21.
3. SAME.—*Confiscation.—Destruction of Property.—Notice.*—The owner of articles—such as slot-machines, gaming tables and chips —which may lawfully be used as property has a constitutional right to notice and an opportunity to defend, before the court may lawfully condemn such property to destruction.   p. 22.
4. CRIMINAL LAW.—*Search-Warrants.—Destruction of Property.— Unlawful Use.*—It is the use of articles for accomplishing unlawful acts and not the articles themselves that the law condemns, and articles seized under a search-warrant, which were used for an unlawful purpose, though they might be useful for lawful purposes, should be ordered by the court to be destroyed.   p. 23.

5. CRIMINAL LAW.— *Search-Warrants.*— *Use of.*— *Constitutional Law.*—Search-warrants cannot be used except in the furtherance of public prosecutions, and may be issued only upon affidavits showing the nature of the offenses committed by the use of the articles in question. p. 24.

6. SAME.—*Search-Warrants.*—*Destruction of Property Before Trial of Defendant.*—Under §1927 Burns 1908, Acts 1907, p. 661, §2, articles used for an unlawful purpose and seized under a search warrant may be destroyed by order of court before the trial of the defendant unlawfully using same. p. 25.

7. APPEAL.—*Final Judgment.*—*Search-Warrants.*—*Destruction of Property.*—An order relegating property seized under a search-warrant and alleged to have been unlawfully used, to the custody of the sheriff until the further order of the court is not final nor appealable. p. 26.

From Orange Circuit Court; *Thomas B. Buskirk,* Judge.

Prosecution by The State of Indiana against Thomas G. Derry. From an order relegating certain seized articles to the custody of the sheriff, the State appeals. *Appeal dismissed.*

*James Bingham,* Attorney-General, *Edward M. White, H. M. Dowling, A. G. Cavins* and *George W. McMahan,* for the State.

*George Shirts* and *Will H. Talbott,* for appellee.

HADLEY, J.—On July 3, 1906, on an affidavit filed before a justice of the peace of Paoli township, charging that certain named articles of gaming apparatus were being used in a specified building for unlawful gaming, a search-warrant was issued to the constable, who, under the writ, seized and brought before the justice thirty-four slot-machines, ten roulette tables, three Klondike tables, three faro tables, six poker tables, one West Baden club table, one keno outfit, two packages of chips and $588.85 cash, found in the slot-machines—all of which articles, as alleged by the State and admitted by appellee, belonged to the latter. The justice at once turned said articles over to the sheriff of the county. On the same day an affidavit was filed before said justice charging appellee and another with keeping all of

said articles for unlawful purposes, and appellee was arrested on said charge and gave bond for his appearance for trial. July 31, the venue of the prosecution was changed to a justice of the peace of Orangeville township, and while there pending trial the State, by the Attorney-General, filed before said last-named justice a petition for an order for the destruction of said seized articles. Appellee and one Charles were made parties to the petition to destroy, and, after notice, appellee appeared and filed a plea in abatement. The trial resulted in an order to the sheriff completely to destroy the seized articles, except the cash, which he was ordered to turn over to appellee as the owner. The cause was then appealed to the circuit court, where the State's motion to destroy was overruled, and it was ordered that the articles remain in the hands of the sheriff until disposed of according to law, and that the cash be delivered to Derry. The State's motion for a new trial, because the decision was not sustained by sufficient evidence and was contrary to law, was overruled, and the State appeals.

At the outset we encounter appellee's motion to dismiss the appeal, because, among other reasons, the ruling appealed from was not a final judgment, and hence not appealable.

The vital question in the case is whether, under our statutes, the articles described in the petition to destroy were kept for gaming purposes, or permitted to be used for unlawful gaming. The right to destroy depended wholly upon a solution of this question.

1. 

The Attorney-General proceeds upon the theory that the articles in controversy—obviously gaming devices—are noxious *per se,* and therefore under legal condemnation, and, being in the custody of the law, should be destroyed without further evidence.

It is alleged in the petition that all of said articles are gaming devices, and were found in the possession of the defendant, who claimed to be, and who was in fact, the owner

thereof; that the defendant had been charged with keeping and exhibiting said articles contrary to the laws of Indiana, and was under bond for trial on said charge, but as yet had not been tried thereon. "Wherefore," it is concluded, "the State of Indiana, petitioner herein, charges that said articles and things are gaming devices, and as such should be completely destroyed by the sheriff of Orange county," and a prayer for such an order is made. It is nowhere alleged in the petition that the articles were kept or used for unlawful gaming, or for any other illegal purpose. If the statute required, which we think it does not, the filing of a formal petition disclosing a legal right to destroy the property, we should be compelled to hold the one before us insufficient.

It is enough to suggest that by the fundamental law no one may be deprived of anything the law recognizes as property without notice and an opportunity to defend. There are, however, some things, having a commercial value, which, from their very nature, are under legal condemnation, and which the law pursues, rather than protects, because of their pernicious effect upon the public health and morals; for instance, counterfeit money, obscene pictures, vile books, and the like. Such things are regarded by the law as *mala per se*, because there is no condition or circumstance under which they may come to the possession or attention of the individual without tending to the corruption and prejudice of the public morals and welfare. Such articles cannot be kept, used or exhibited for any useful or innocent purpose. Burglars' tools and counterfeiting apparatus are generally put in the same class. Being inherently evil, no absolute dominion or property right can exist in them, and, outside the statute, courts have authority, under their police powers, to destroy them for the protection of society. *State v. Robbins* (1890), 124 Ind. 308, 8 L. R. A. 438; *Spalding v. Preston* (1848), 21 Vt. 9, 50 Am. Dec. 68; *Commonwealth*

v. *Coffee* (1857), 9 Gray 139; *Board, etc.*, v. *Wagner* (1901), 93 Md. 182, 48 Atl. 455, 52 L. R. A. 775, 86 Am. St. 423.

"There are other articles," says Mitchell, J., in *State* v. *Robbins, supra,* "which are not in and of themselves nuisances, which may be used for an illegal or immoral purpose, and which may yet be regarded as property.

It may be a question whether implements or articles seized in a particular case are honest, lawful tools, or things for innocent amusement, or whether they are devices for counterfeiting, burglars' tools, or apparatus for gambling. * * * Gaming apparatus may be made of valuable material, capable in some other form of being applied to useful and lawful purposes, or it may be used for innocent and harmless amusement in the form in which it exists. It cannot always be determined by inspection, or declared as matter of law, that articles used for the illegal and immoral purpose of gaming, may not also be used for innocent and lawful purposes, or that in honest hands they may not constitute lawful merchandise."

The articles involved in this appeal are described as slot-machines, variously named tables and chips. All these articles are suitable for, and may be employed in, unlawful gaming. There are many other things, as playing-cards, billiard-tables, and even race-horses, that are suitable, and are often used, as gambling devices. According to the testimony of the State's witness in this case, all the articles in the possession of the sheriff are also fit, and may be used, for innocent and harmless amusement, for household furniture, and for other lawful and beneficial purposes. The ownership, possession and use of such things are not prohibited by law. Their manufacture is not forbidden. They are treated as ordinary articles of merchandise, may be stored in warehouses, exposed for sale, purchased and used in the family or hall as furniture, may be used for innocent amusement, kept as curiosities and used for purposes

other than unlawful gaming. None of the articles mentioned are innately vicious, as lascivious books and pictures. Being capable of two uses—one lawful and the other unlawful—neither ministerial officers nor courts can, upon mere view, deprive them of their characteristics as property, and put them under legal condemnation. Such a proceeding would be clearly unconstitutional. See Cooley, Const. Lim. (7th ed.), 431; *State* v. *Robbins, supra; Wagner* v. *Upshur* (1902), 95 Md. 519; *Lowry* v. *Rainwater* (1879), 70 Mo. 152, 35 Am. Rep. 420; *Sullivan* v. *City of Oneida* (1871), 61 Ill. 242; *Daniels* v. *Homer* (1905), 139 N. C. 219, 51 S. E. 992, 3 L. R. A. (N. S.) 997; *Woods* v. *Cottrell* (1904), 55 W. Va. 476, 47 S. E. 275, 65 L. R. A. 616, 104 Am. St. 1004; 20 Cyc., 920.

It is the use of such articles as a means of accomplishing unlawful acts, and not the articles themselves, that the law condemns. The statute clearly proceeds on this theory. It is provided by section 565 of the public offenses act of 1905 (Acts 1905, pp. 584, 718, §2474 Burns 1908) that "whoever *keeps* or exhibits for gain, or to win or gain money or other property, any gaming table, * * * gambling apparatus, device, table or machine * * * for the purpose of betting or gaming, or, allows the same to be used for any such purpose, shall, on conviction, be fined," etc. The statute was enacted in 1881 (§2086 R. S. 1881). It was reviewed and interpreted by this court (*State* v. *Robbins, supra*) in 1890, fifteen years before the legislature readopted the section in identically the same terms by the act of 1905, *supra,* presumably intending that the same shall be administered in the sense attributed to it by this court in the case of *State* v. *Robbins, supra.* It is expressly recognized in the case just cited that such articles as we have under consideration may be possessed, owned and enjoyed as property, within the limitations imposed by the statute. "In many instances," says the court, "property

may, or may not, exist in·a thing, according to the use to which it is or may be applied, or the purpose for which it is kept or exhibited.''

The same principle runs through the search-warrant statute which forms the basis of this proceeding. This statute is sustained under the federal Constitution (4th Amendment), forbidding unreasonable search and seizure, only as a necessary means in the suppression of crime and the detection and punishment of criminals, and is required to be cautiously framed and strictly construed. Neither at common law, nor under the statute, is such process available to individuals in the course of civil proceedings, nor for the maintenance of any mere private right. It may only be invoked in the furtherance of public prosecutions. *Robinson* v. *Richardson* (1859), 13 Gray (Mass.) 454; *Lippman* v. *People* (1898), 175 Ill. 101, 51 N. E. 872; 25 Am. and Eng. Ency. Law (2d ed.), 145.. It is apparent that the legislature had this view of the subject when it enacted the following: ''Justices of the peace may issue warrants to search any house or place: * * * Fourth. For any gaming table, establishment, device or apparatus *kept for the purpose of unlawful gaming,* or to win or gain money or other property.''. Acts 1905, p. 584, §56, §1923 Burns 1908.

A justice of the peace has no right arbitrarily to issue the warrant here provided. He must require a *prima facie* case to be made by some responsible person before he has any power·to authorize the invasion of private property. Section fifty-seven of last-named act (§1924 Burns 1908) provides: ''No warrant for search shall be issued until there is filed with the justice an affidavit, particularly describing the house or place to be searched and the things to be searched for, and alleging substantially the offense in relation thereto.''

By these statutes we note: (1) That the property in controversy could have been legally seized by a search-war-

rant only on the ground that the same was kept or used for the purpose of unlawful gaming; and (2) that before the justice has any jurisdiction—that is, any authority to issue the warrant—it is necessary for him to be informed not only that the articles were kept for unlawful gaming, but advised, under oath, of the nature of the offense that had been committed by their use.

The innocent possession and proper use of the articles were under the protection of the law; and to justify the search and seizure, their unlawful use, actual or designed, must be alleged and shown by the State. So in the final disposition of the goods in controversy, their use, before the seizure, becomes the pivotal question for decision by a court that has authority to determine fully and finally whether said articles had been kept for illegal purposes—in other words, a court of criminal jurisdiction, with power to enforce the penalty if guilty, and to restore the property to the owner if innocently held. *Wagner* v. *Upshur, supra;* 25 Am. and Eng. Ency. Law (2d ed.), 146.

The Attorney-General relies on the act of 1907 (Acts 1907, p. 661, §§1926-1928 Burns 1908), which act amends sections fifty-nine and sixty of the act of 1905, *supra,* and adds a new section on the same subject.

It is enacted by said amended section sixty that the sheriff so receiving slot-machines, gaming tables, or any other gaming apparatus, of any kind or description, seized under a search-warrant, shall forthwith destroy the same, if ordered to do so by the court, such order to be made only after ten days' notice to the person in whose possession such property was found, or to the owner, if he be known, and an opportunity afforded him for a hearing. The new section (§1928, *supra*) provides that where property described in said section sixty shall be delivered by the justice to the sheriff, the justice shall, without waiting for the trial of the defendant on the charge of keeping a gambling place, order the sheriff to destroy said property forthwith, as pro-

vided in said section; that is, the sheriff shall forthwith destroy the property after the court has ordered him to do so.

By this new and amendatory legislation two things were clearly intended: (1) That no one's property shall be destroyed in a search-warrant proceeding until the owner, or person in possession, shall have notice and an opportunity to be heard in contesting the ground on which the destruction is claimed; and (2) that a proceeding in the nature of a libel against the property seized may be maintained by the State, and the legal status of the articles finally determined in a proceeding separate and distinct from a prosecution against the owner, charged with keeping the articles for unlawful gaming. Indeed, we perceive no reason why a judgment of condemnation may not be rendered against the seized articles, without stopping to inquire whether a prosecution has been commenced against the person who tainted the property by subjecting it to improper use. In such a proceeding it is not material who kept the articles, or was misusing them. The fact that they are gaming devices, and, when seized, are being used or kept for unlawful gaming, is sufficient to send them under the sheriff's ax. In this proceeding it was the duty of the court on the hearing to ascertain and definitely decide whether the articles in the hands of the sheriff were, when seized, being used or kept for illegal purposes, and if the finding was in the affirmative to order the things destroyed, and if in the negative to order their restoration to the owner or person in possession, and thus put an end to the controversy.

An appeal can be taken only from a final judgment. §671 Burns 1908, §632 R. S. 1881. "A final judgment is the ultimate determination of the court upon the whole controversy in the action." Pfeiffer v. Crane (1883), 89 Ind. 485. And see Mak-Saw-Ba Club v. Coffin (1907), 169 Ind. 204, and authorities cited. The general rule is that a judgment, to be final, must dispose of the case as to all the parties and the whole subject-matter in

dispute. *Terre Haute, etc., R. Co.* v. *Indianapolis, etc., Traction Co.* (1906), 167 Ind. 193, 119 Am. St. 469.

In Elliott, App. Proc., §83, it is said: "No order is final in such a sense as to constitute a final judgment unless it disposes of the main case so far as there is power in the trial court to decide upon the questions presented by the issues, no matter how clearly and decisively the order may indicate what the ultimate judgment will be. Until there is an ultimate judgment the case is not finally disposed of."

"An order of the court, made in the progress of the cause, requiring something to be done or observed, but not determining the controversy, is an interlocutory order." *Pfeiffer* v. *Crane, supra.* And see *Home, etc., Power Co.* v. *Globe Tissue Paper Co.* (1896), 145 Ind. 174.

The order or judgment appealed from is in these words: "It is therefore considered and adjudged by the court that the State of Indiana's petition and motion to destroy the gambling devices, in said petition described, be overruled, and that the property in question remain in the custody of the sheriff of Orange county, in the State of Indiana, until ordered destroyed by due course of law. It is further considered and adjudged by the court that the money in question, to wit, the sum of $588.85, now in the hands of the sheriff of Orange county, in the State of Indiana, and taken from the slot-machines, alleged to be the property of the defendant, Thomas G. Derry, is the property of said Thomas G. Derry, and said sheriff is ordered and directed to turn the same over to said Thomas G. Derry."

It will be noted that the order does not pretend to make a final disposition of the case. There is no order for the destruction of the property, and none for its return to the owner. The order left the status of the controverted property precisely as it was before the hearing. In effect it amounts to an interlocutory order of postponement of the question. The power to decide whether the property had been forfeited implies judicial discretion, and also the power

to continue or delay the hearing until such time as the same could be fully and conveniently heard.

With respect to the slot-machines and gaming tables, it is clear that the order concerning them was not final or appealable. In regard to the cash, there arose no question. The State alleged in its petition and proved on the trial that the money found in the slot-machines was the property of appellee. Appellee claimed the same thing. In respect to the money, there was no controversy. The State had no claim upon it and no right to confiscate it. There was nothing for the court to do with it but to turn it over to the owner. No question concerning it can therefore arise on this appeal.

We think the judgment appealed from is not final, and that this appeal should be dismissed.

Appeal dismissed.

Monks, J., concurs in result.