PARRY v. CROSBY, Justice of the Peace, et al.

No. 6225.   Decided August 25, 1941.   (116 P. 2d 411.)

See 50 C. J. Prohibition, sec. 41; For constitutionality of statutes providing for destruction of gambling devices, see 81 A. L. R. 730 note.

See also 24 Am. Jur., 436.

*Harley W. Gustin,* of Salt Lake City, for appellant.

*Joseph Chez,* Atty. Gen., and *S. D. Huffaker,* Deputy Atty. Gen., for respondents.

WOLFE, Justice.

Appeal from an order of the District Court of Kane County, denying a writ of prohibition against the defendants. The action grows out of the following facts:

Plaintiff, Whitney Parry, and his brother C. G. Parry, were co-partners operating a hotel in Kanab, Utah, known as "Parry Lodge." In June, 1939, the lodge was being rented and used exclusively by a motion picture company. During that time signs were posted indicating that the lodge was closed to the public. Meals, room, bar, and janitorial services were furnished by the partnership. The four slot machines involved in this action were located in the bar room. The machines were of the common type operated by the pulling of a lever after inserting a coin of the required denomination.

On June 12, 1939, the sheriff, one of the defendants, filed an affidavit before the Justice of the Peace, defendant Crosby, swearing on information and belief that plaintiff had certain slot machines in the lodge which were being operated contrary to law. This affidavit bore the title, "State of Utah v. Whitney Parry." The Justice of the Peace then issued a writ of attachment commanding the sheriff to attach and keep the slot machines until disposed of by order of court. The sheriff seized and carried off the four devices on that date. Plaintiff denied that a copy of the writ or other instrument had been served upon him. After the seizure the Justice of the Peace issued an order directing plaintiff to appear and show cause why the machines should not be destroyed and the money therein (about $600) forfeited to the County. Before time for hearing in the Justice's court on the order to show cause, this action for a writ of prohibition was commenced in the district court. After hearing, the writ was denied.

The only issue before this court is whether or not a writ of prohibition will lie to enjoin the Justice's court from exercising jurisdiction over the slot machines seized by the sheriff in the manner hereinbefore described. This involves the construction of Sec. 103-25-1, R. S. U. 1933, and the procedure to be followed in forfeiting or destroying slot machines as gambling devices *under that section.* That statute reads:

"Every person who deals or carries on, opens or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game of faro, monte, roulette, lansquenet, rouge et noir, rondo, or any game played with cards, dice or any other device, for money, checks, credit or any other representative of value is guilty of a felony, and *it shall be the duty of all sheriffs*, constables, police and other peace officers *whenever it shall come to the knowledge of such officer that any person has in his possession any* cards, tables, checks, balls, wheels, *slot machines* or gambling devices of any nature or kind whatsoever *used or kept* for the purpose of playing for money, or for tokens redeemable in money, at any of the games mentioned in this chapter, *or that any* cards, tables, checks, balls, wheels, *slot machines* or gambling devices used or kept for the purposes aforesaid *may be found in any place, to seize and take such* cards, tables, checks, balls, wheels, *slot machines* or other gambling devices, *and convey the same before a magistrate of the county* in which such devices shall be found; *and it shall be the duty of such magistrate* to inquire of such witnesses as he shall summon or as may appear before him in that behalf touching the nature of such gambling devices, and, if such magistrate shall *determine that the same are used or kept for the purpose of being used at any game or games of chance* described in this chapter, it shall be his duty to destroy the same." (Italics added.)

The words of the statute pertinent to this case simply say that the officer shall seize the property whenever it comes to his knowledge that they are in the possession of *any* person, used or kept for gambling purposes. Nothing is said about a search warrant. Nothing is said about seizure in connection with the arrest of the owner or other person charged with gambling or operating the devices. Nothing is said which would allow an exception in the instant case merely because the lodge was being used exclusively by one group of people. The scope of the statute is two-fold: The first part makes it a crime to operate any of the games listed. The second part makes it the duty of peace officers to summarily seize gambling devices therein enumerated which are used or kept for gambling purposes and convey them before a magistrate who shall determine if they were used or kept for such purposes.

Statutes authorizing the summary seizure of such devices have been upheld in numerous decisions by courts in

other jurisdictions. The case of *Durant* v. *Bennett*, D. C. 54 F. 2d 634, 638, involved an application to the Federal court to enjoin the state officials of South Carolina from enforcing a statute upon the ground it violated the Fourteenth Amendment to the Federal Constitution. The section of the statute cited by the court as being in issue, reads:

"Any vending or slot machine  *  *  *  prohibited by this Act shall be seized by any officer of the law and at once taken before any Magistrate of the County in which such machine is seized, who shall immediately examine same, and if he is satisfied that such vending or slot machine is in violation of this Act or any other law of this State, he shall direct that said machine be immediately destroyed." Act S. C. May 9, 1931, 3/7 St. at Large, p. 369, § 3.

Commenting on this statute, the Federal court said:

"There is no doubt that the procedure outlined in section 3 is very drastic and summary. It provides that the machine may be taken before a magistrate who shall examine the same, and, if he comes to the conclusion that the machine is a gambling device, he may order it to be summarily destroyed. There is no provision for a hearing by the magistrate. There is no provision for the defendant to test the accuracy or wisdom of the magistrate's decision. It is certainly a drastic remedy. But, when we take into consideration the evil which this statute seeks to remedy, we do not think that it violates the due process clause of the Fourteenth Amendment."

The decision in *Durant* v. *Bennett*, supra, is adopted in toto by the Supreme Court of South Carolina in construing the same statute in *State ex rel. Daniel* v. *Kizer*, 164 S. C. 383, 162 S. E. 444, 81 A. L. R. 722. See also *Stanley-Thompson Liquor Co.* v. *People*, 63 Colo. 456, 168 P. 750.

*Mullen & Co.* v. *Moseley*, 13 Idaho 457, 90 P. 986, 987, 12 L. R. A., N. S. 394, 121 Am. St. Rep. 277, 13 Ann. Cas. 450, has been cited in many decisions dealing with this issue. That case involved an action in replevin against a sheriff to recover slot machines. The sheriff had proceeded under a statute which made it the duty of a judge whenever he "shall have knowledge or shall receive satisfactory information that there is any gambling  *  *  *  device" to issue a warrant directing the sheriff "to seize and bring

before him such gambling　＊　＊　＊　device, and cause the same to be publicly destroyed, by burning or otherwise." In that case the court stated that while a man's property may not be taken without due process of law, he may not invoke this guaranty when he seeks his day in court to dispute with officers of the law the right of possession of instrumentalities directed against society. It then said:

"In such case there can be no doubt of the power of the Legislature to authorize a *summary seizure and destruction of such instrumentalities and devices.*" (Italics added.)

One view adopted by courts upholding such summary seizures is that

"where gambling implements and apparatus are determined by the legislature to be dangerous and pernicious to the public welfare, they are not property which is subject to the protection of the law, but cease to be regarded as property within the meaning of the due process clause and are liable to seizure, forfeiture, and destruction." 24 Am. Jur. 437.

In *Board of Police Commissioners* v. *Wagner*, 93 Md. 182, 48 A. 455, 457, 52 L. R. A. 775, 86 Am. St. Rep. 423, such seizures are approved as an effective and necessary medium of crime prevention, the court placing slot machines in a category with burglar's tools, and saying:

"The duty to prevent crime carries with it in such a case the power to summarily seize the offending article."

We do not adopt the cases above cited as authority for more than the seizure in a summary manner. Certainly after being seized, the destruction or forfeiture of the devices can only be ordered by the magistrate whose duty it is to determine the purpose for which they were kept or used.

That slot machines of the type involved in this case are gambling devices has been held in numerous cases. Courts have so held even in the light of evidence that some machines were of a type capable of incidental nongambling functions. *Guarnera* v. *Lee County*, 285 Ill. App. 238, 1 N. E. 2d 98; *Rogers* v. *Douglass*, 181 Okl. 32, 72 P. 2d 823;

*Enloe* v. *Lawson,* 146 Or. 621, 31 P. 2d 171; 18 Words and Phrases, Perm. Ed., 40, and cases there cited. From these cases we conclude that under our statute, a seizure would be lawful and the devices subject to confiscation on the determination by the magistrate that the devices are of such a type as to be inherently illegal, capable of no lawful use, and, therefore, must have been used or kept for gambling, or that the officer at the time of the seizure had knowledge that they were so used or kept.

The Colorado case of *Stanley-Thompson Liquor Co.* v. *People,* supra, involved a statute similar to ours. The gambling devices involved, some of which were stored in warehouses and others in the back room of the place of business, were held to be subject to destruction as much as though actually being used. The court said [63 Colo. 456, 168 P. 751]:

"It is well settled that things which are capable of no use for lawful purposes—and it is established that these instruments are of that class—are not the subject of property. They cannot be recovered in replevin, nor will damages be given for their loss or injury. * * * If an instrument can have no lawful use, it must be presumed, in absence of evidence to the contrary, that an illegal use is intended. * * * Its very existence is an imminent danger to the social welfare * * *; and it may be seized under statutory authority, or even under general police regulations."

Much of the above language is quoted with approval by the California court in *People* v. *Kay,* 38 Cal. App. 2d Supp. 759, 102 P. 2d 1110, in construing a statute somewhat different from that of Utah or Colorado. The California statute makes unlawful the possession of any machine,

"Upon the result of action of which money * * * is staked or hazarded, and which is operated * * * by placing or depositing therein any coins," etc. Pen. Code Cal. § 330a.

The California court held that the operation of its statute is not to be restricted to those cases only in which slot machines are in actual use. The Utah statute applies to machines which are "used or kept" for the purpose of play-

ing for money, etc. It was enacted for the purpose of suppressing devices used or kept for gambling. As we construe the statute, a determination by the court of whether or not they are devices of the type used or kept for gambling or are so used or kept is not necessary prior to seizure. However, to sustain the seizure and order the destruction of the devices, the magistrate must determine that the officer had prior knowledge of the possession of the devices, and that they were used or kept for gambling purposes, or that the devices were of such a type as to be inherently illegal, capable of no lawful use, and therefore must have been used or kept for gambling.

The procedure prescribed in Sec. 103-25-1, R. S. U. 1933, for confiscating gambling devices must not be confused with the procedure set out in Sec. 164, Chap. 43, Laws of Utah 1935, for seizing articles connected with the illegal sale or manufacture of alcoholic beverages, as was done in plaintiff's brief in citing *Utah Liquor Control Comm.* v. *Worras*, 97 Utah 351, 93 P. 2d 455. The former provides for the summary seizure of gambling devices. Under the latter statute, seizure of alcoholic beverage implements requires an affidavit, search warrant, etc. The statutes are entirely different and the liquor control procedure is not to be deemed to affect the right of peace officers to seize gambling devices where they proceed on knowledge that they are kept or used for gambling. See concurring opinion of Mr. Justice Pratt in *Utah Liquor Control Comm.* v. *Worras*, supra.

A further contention of plaintiff in this matter is that the Justice's court lacked jurisdiction over the property because there was no proceeding in rem. Admittedly the proceedings were not styled in rem, but the court was acting in rem and made no attempt to act in personam. By the order to show cause, plaintiff had due notice of the forfeiture hearing and of the fact that the res alone was being proceeded against. *Enloe* v. *Lawson*, supra. He, therefore, had full opportunity to appear before the justice's court and defend his case on its merits; offer proof, if any, that

the machines were not gambling devices within the meaning of the statute; or object to the form of the procedure being followed. That is the course of law to be followed to determine the nature of the seized property and to test its liability to forfeiture and destruction. Therein, and in an appeal from the Justice court's ruling, lay plaintiff's remedy. But before exhausting that course, he undertook this action to enjoin the Justice's court proceedings. Under such circumstances a writ of prohibition could not properly issue. *Hislop* v. *Rodgers*, 54 Ariz. 101, 92 P. 2d 527; *State ex rel. Carrigan* v. *Bowman*, 40 Utah 91, 119 P. 1037.

The rule is well settled that equity will not interfere to prohibit or enjoin the enforcement of a criminal statute. *Conte* v. *Roberts*, 58 R. I. 353, 192 A. 814; *Guarnera* v. *Lee County*, supra; *Rogers* v. *Douglass*, supra; *Jackie Cab Co.* v. *Chicago Park Dist.*, 366 Ill. 474, 9 N. E. 2d 213; *City of Wink* v. *Griffith Amusement Co.*, 129 Tex. 40, 100 S. W. 2d 695; *State* v. *Joynt*, 341 Mo. 788, 110 S. W. 2d 737. In some cases that rule has been applied even though the constitutionality of the statute was in question. In *Carolene Products Co.* v. *Wallace*, D. C., 27 F. Supp. 110, 113, affirmed, 307 U. S. 612, 59 S. Ct. 1033, 83 L. Ed. 1495, the court said:

"To justify such interference there must be exceptional circumstances and a clear showing that an injunction is necessary in order to afford adequate protection of constitutional rights and the danger of irreparable loss must be both great and immediate; otherwise the accused must set up his defense in the criminal case, even when his defense involves the validity of the statute, with the violation of which he is charged."

In the case before us plaintiff has not shown a state of facts which would require equitable relief.

By way of summary we conclude that plaintiff's petition for a writ of prohibition was properly denied for the reasons that (1) the summary seizure of slot machines is authorized by Section 103-25-1, R. S. U. 1933; and (2) in any event, equity will not interfere, under circumstances such

as these, to enjoin the enforcement of the criminal statute, there being an adequate remedy at law. *State* v. *Joynt,* supra.

Judgment affirmed. Costs to respondents.

McDONOUGH, J., concurs.

PRATT, Justice (concurring).

I concur for the reason that there is no property right in an instrument that has but one use and that an illegal one.

LARSON, Justice (dissenting).

I dissent. Were it not that to my mind the prevailing opinion does violence to fundamental and basic concepts and provisions of the Constitution, the statute, and to all juristic interpretations, I should write nothing more than the simple "I dissent." But as I read the prevailing opinion it is so inconsistent with itself, both in language and logic, and is so palpably a case of judicial legislation that I feel impelled to set forth its inherent weaknesses, lest it be deemed virile enough to perpetuate its species.

The opinion states, "Statutes authorizing the summary seizure of such devices have been upheld in numerous decisions by courts in other jurisdictions" and cites several cases, none of which present a situation like the case before us, and are clearly not in point here.

Appellant, plaintiff below, by this appeal presented the following points:

(1) The seizure of the slot machines by the defendant sheriff was unlawful, and therefore the court has no jurisdiction of the property.

(2) The defendant justice has no jurisdiction to hear the cause or condemn the property because (a) there is no pleading to invoke his jurisdiction; (b) proceedings to destroy or forfeit such property are in rem, and the proceeding, if any, before the justice is in personam; and (c) the property has not been brought lawfully before the justice's

court, and since in proceedings in rem the property is the defendant, the court has not acquired jurisdiction of the defendant property.

These propositions overlap and interlap and so will be discussed in the answer to the following questions. Was the seizure of the slot machines by the sheriff lawful? Under the facts in this cause did the justice have jurisdiction to determine the question of forfeiture and make an order of forfeiture and destruction? The statutes involved read as follows:

103-25-1, R. S. U. 1933: "Every person who deals or carries on, opens or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game of faro, monte, roulette, lansquenet, rouge et noir, rondo, or any game played with cards, dice or any other device, for money, checks, credit or any other representative of value is guilty of a felony, and it shall be the duty of all sheriffs, constables, police and other peace officers whenever it shall be the duty of all sheriffs, constables, police and other peace officers whenever it shall come to the knowledge of such officer that any person has in his possession any cards, tables, checks, balls, wheels, slot machines or gambling devices of any nature or kind whatsoever used or kept for the purpose of playing for money, or for tokens redeemable in money, at any of the games mentioned in this chapter, or that any cards, tables, checks, balls, wheels, slot machines or gambling devices used or kept for the purpose aforesaid may be found in any place, to seize and take such cards, tables, checks, balls, wheels, slot machines or other gambling devices and convey the same before a magistrate of the county in which such devices shall be found; and it shall be the duty of such magistrate to inquire of such witnesses as he shall summon or as may appear before him in that behalf touching the nature of such gambling devices, and, if such magistrate shall determine that the same are used or kept for the purpose of being used at any game or games of chance described in this chapter, it shall be his duty to destroy the same."

103-25-2, R. S. U. 1933: "Every person who knowingly permits any of the games mentioned in the preceding section to be played, conducted or dealt in any house owned or rented by such person, in whole or in part, and any person who plays at or against any of said prohibited games, is guilty of a misdemeanor."

103-25-7, R. S. U. 1933: "Every person who keeps or operates, either as owner, agent or employee, or allows to be kept, used, operated or conducted, in his place of business or elsewhere the device

or instrument commonly known as a 'slot machine,' or any other similar device or instrument for gambling or exhibiting bawdy pictures is guilty of a misdemeanor."

The first section quoted deals with the person who opens, deals, carries on, or conducts a gambling game, making such person guilty of a felony. This is aimed at the operators of gambling houses. The second section deals with persons who play in a gambling game, or who knowingly permit on their premises gambling that amounts to a felony, but who have no other connection with the game. They are made misdemeanants. The third section applies only to those who keep or permit in their places of business the keeping of slot machines or other instruments for gambling. Such are guilty of misdemeanors. Note now that the section dealing with felonies provides that when it comes to the knowledge of an officer that "any person has in his possession any cards * * * slot machines * * * *used or kept for the purpose of playing for money* * * * at any of the games mentioned" or when it comes to his knowledge that any such paraphernalia "used or kept for the purposes aforesaid may be found in any place" it is his duty to seize such paraphernalia and convey it before a magistrate. (Italics added.) Section 103-25-1, R. S. U. 1933. Is the seizure here provided for a part of or incident to making an arrest for a felony, or may it be done without a warrant or writ and without an arrest? Does the phrase "whenever it shall come to the knowledge of such officer," require him to have personal knowledge or may he act upon hearsay or belief? May a seizure be made of machines or devices not "used or kept for the purpose of playing for money * * * at any of the games mentioned in [the] chapter?"

Clearly two requisites are fixed for a seizure of the paraphernalia without a warrant or writ. It must be "used or kept for the purpose of playing for money * * * at any of the games mentioned," and such use of the property or its being kept for such use must come to the knowledge of

the officer. The section has in view two separate and distinct objects: (1) The prosecution and punishment of persons conducting or operating gambling games and houses; and (2) the destruction of gambling devices. Both of these are merely steps or means of effecting the general purpose or object of the entire act, the protection of the public morality. To effectuate this end provision is made for the punishment of the offending operator and also the destruction of the offending property. In the eyes of the law both are a means to the same end and equally potential. One object is accomplished by a criminal prosecution; the other by a proceeding in rem, civil in characted. *Utah Liquor Control Comm.* v. *Wooras,* 97 Utah 351, 93 P. 2d 455. Neither is contingent upon the other. One may succeed and the other fail. But within the scope of proper proceedings both objectives may be accomplished in one action. If the officer sees a criminal offense being committed it is his duty with or without warrant to arrest the offender, seize and take into custody the subject or means of committing the crime, and take it together with the offending person before a magistrate to be proceeded against according to law. Another purpose for such seizure, equally as important, is to have the equipment produced as evidence at the trial of the guilty owner. We must give this statute a reasonable construction. The legislator assumed that the sheriff would with impartiality perform his duty to seize the implements and to arrest the person in possession of them or using them unlawfully, and take them together before the magistrate. The Supreme Court of Colorado in construing a very similar statute in *Newman* v. *People,* 23 Colo. 300, 47 P. 278, 282, said:

"This common-law right and power, being thus reinforced by the provisions of the statute, make manifest the duty of the sheriff to seize gambling devices, *and bring them, with their owner,* before the same magistrate. * * * We so construe the section in this respect as to require the sheriff to take before the same magistrate the seized devices and their owner or user." (Italics supplied.)

In *Willis* v. *Warren*, 1 Hilt., N. Y., 590, the court said:

"When the arrest is made, the seizure of the implements is provided for by law, as we have seen, for the twofold object of using them as evidence of the charge, and that they may be destroyed if conviction follow."

It is the policy of the law to destroy gambling apparatus, the loss being part of the punishment inflicted upon the owner for the offense. While the section provides for the destruction of gambling apparatus, it must be held to authorize such destruction only after conviction for the offense of gambling, in which the property was employed, or by a proceeding in rem to destroy the property as a public nuisance. *Willis* v. *Warren*, supra; *Utah Liquor Control Comm.* v. *Wooras*, supra. Speaking of this statute, this court in *Bruce* v. *Sharp*, 41 Utah 566, 127 P. 343, 344, said:

"The main object of the statute is not the seizure and destruction of gambling devices, but to denounce and forbid gambling and fix penalties."

Property may be confiscated as a punishment or an offense but not until the offense is established by conviction, either of the user or of the property itself. *Wynehamer* v. *People*, 13 N. Y. 378, 3 Kern. 378, 420; Wharton, Am. Crim. Law, § 2547. In *Woods* v. *Cottrell*, 55 W. Va. 476, 47 S. E. 275, 277, 65 L. R. A. 616, 104 Am. St. Rep. 1004, 2 Ann. Cas. 933, the court said:

"We think that whether the machine shall be burned or released depends on whether the accused is guilty. If not guilty, he is not himself to be punished, neither is the machine to be burned; and as only the trial court can determine his guilt, so only it can condemn the machine to be burned. If the party is guilty, destruction of the machine follows the ascertainment of his guilt. If acquitted, judgment of restitution to him of his property follows. Though the thing be plainly an instrument of gambling under the statute, yet, if its owner be acquitted of using it for that purpose, it cannot be destroyed, as it is only instruments actually used and kept for gaming that are thus condemned to destruction."

To the same effect in *Cambria* v. *Bachmann*, 93 W. Va. 463, 118 S. E. 336. The Indiana Court in *State* v. *Robbins*, 124 Ind. 308, 24 N. E. 978, 979, 8 L. R. A. 438, says:

"We have no doubt of the authority of a sheriff, or other officer authorized to make arrests, to seize articles which he knows, or has good reason to believe, are being employed in violating the criminal law, or as instruments for the commission of crime. Things which may supply evidence of an offense of which one has been accused may be taken into the possession of the officer making the arrest, to be disposed of under the direction of the court. * * * An officer has no authority to take money from the person of a prisoner, or to take from him any other property or thing, unless it is in some way connected with the crime with the commission of which he is charged, or unless it renders his arrest or detention hazardous, or might facilitate his escape. It is not only the right, but it is the duty, of every peace-officer to seize any property or thing that is being used in the commission of crime, or in the violation of law enacted for the protection of the health, morals, and welfare of the community. *Spalding* v. *Preston*, 21 Vt. 9 [50 Am. Dec. 68]."

These are only a few of the many cases to the same effect from numerous jurisdictions. We find no authorities holding that property may be seized under this statute, except in connection with a criminal prosecution for violation of the gambling law, that is in a proceeding against a person for the commission of the crime of gambling or permitting gambling by the use of such property, or else by proper proceeding in rem as provided by the laws of the state. Some interesting observations are made in *Enloc* v *Lawson*, 146 Or. 621, 31 P. 2d 171.

What is the duty of the sheriff or other police officer who has knowledge that apparatus of the kinds mentioned in the chapter is used or kept for the purpose of playing for money at any of the games mentioned in the chapter, but does not see it used in an unlawful way and does not know who keeps it, or operates or plays at the games, so he can institute a criminal prosecution. Clearly to make a proper affidavit before a magistrate directed against the property itself, an action in rem, and armed with a warrant to attach or seize the property and bring it before the court.

Such proceeding is one in rem, not in personam, and the property itself is the defendant. Parties who claim it are in effect intervenors. *Utah Liquor Control Comm.* v. *Wooras,* supra. In *Kite (Assmussen, Intervenor)* v. *People,* 32 Colo. 5, 74 P. 886, 888, the Colorado court construing a statute similar to the one here involved said:

"Under similar statutes in other states the doctrine has been firmly established that the proceeding provided for in the foregoing section is in rem." *Glennon* v. *Britton,* 155 Ill. 232, 40 N. E. 594; *Oppenheimer* v. *Lalor,* 36 Misc. 546, 73 N. Y. S. 948; *Davidson* v. *New Orleans,* 96 U. S. 97, 24 L. Ed. 616; Waples Proc. in Rem., §§ 23, 24, 65, 68, 72, 110, 140, 231, 238; *Lawton* v. *Steele,* 152 U. S. 133, 14 S. Ct. 499, 38 L. Ed. 385.

The Arkansas Court, speaking of such seizure provisions in *Furth* v. *State,* 72 Ark. 161, 78 S. W. 759, 760, says:

"This is a proceeding in rem of a civil nature. It is a summary proceeding in the exercise of the police power of the state, under a statute passed to suppress the nuisance of gambling."

And in *McCoy* v. *Zane,* 65 Mo. 11, the court said that such statute should be strictly construed. See, also, *Lowry* v. *Rainwater,* 70 Mo. 152, 35 Am. Rep. 420. The Maryland Court said concerning this question:

"It is clear upon principle and authority that no seizure can be made as a preventive measure without it had first been properly established that the article was procured and held for an illegal purpose." *Police Com'rs* v. *Wagner,* 93 Md. 182, 48 A. 455, 456, 52 L. R. A. 775, 86 Am. St. Rep. 423.

In a subsequent appeal in the same case, *Wagner* v. *Upshur,* 95 Md. 519, 52 A. 509, 510, 93 Am. St. Rep. 412, the court said in reference to the first appeal that the following propositions were thereby settled:

"First, that only such * * * articles as are intended to be used in violation of law, and can be used for no legitimate purpose, can be summarily seized by the police authorities; and secondly, that articles or property that may not be used for legal purposes cannot be seized until it has first been properly established that the article

was procured, held, or used for an illegal purpose; and, thirdly, that in order to properly establish that the article was designed to be put, or has been put, to an illegal use, there must be a proceeding in a court of criminal jurisdiction, and the question of the guilt or innocence of the owner of or person who uses the article cannot be determined in the replevin case."

It is clear that such property can be seized and condemned only in connection with a criminal proceeding, either (a) when the property is unlawfully used in the presence or sight of the officer; or (b) when seized in connection with an arrest of a person using it illegally; or (c) in a proceeding in rem against the property itself. It is conceded that neither (a) nor (b) has any application in the present situation. Can the seizure and attempted hearing for forfeiture and destruction be upheld as a proceeding in rem for a decree of forfeiture of the property? We have pointed out that a seizure without warrant can be made only in connection with a criminal prosecution. Property can be seized otherwise only under the provisions of the statutes of the state, and the procedure therein prescribed is in general regarded as exclusive and in a sense jurisdictional. *Utah Liquor Control Comm.* v. *Wooras,* supra; *United States* v. *Franzione,* 52 App. D. C. 307, 286 F. 769.

What are the conditions provided by statute that abrogate the property right in the apparatus, equipment, and paraphernalia and so forfeit it? Two rules of practice are indicated in the decisions, based upon different wording of the statutes, or the particular state of facts in the cases. One view holds that no property rights can exist in gambling apparatus, that such paraphernalia is mala in se and therefore may be abated and destroyed by the state without hearing or any formal proceedings or orders and decrees of forfeiture. Such rulings are based upon statutes which outlaw the res itself as not subject to any lawful use, statutes which in effect make the possession or existence of the thing itself unlawful. Such is the basis for cases like *State* v. *Soucie's Hotel,* 95 Me. 518, 50 A. 709.

Another class of decisions upholding informal and summary destruction of such property is composed of those cases in which it was admittedly used or kept for unlawful use or purpose. In such cases courts generally hold that on the admission of unlawful use and purpose, the property is forfeit and the claimant cannot be heard to question the method or procedure for its destruction because no property rights can then exist therein. *Police Com'rs* v. *Wagner,* supra; *Wagner* v. *Upshur,* supra; *Kite* v. *People,* supra; *Mullen & Co.* v. *Moseley,* 13 Idaho 457, 90 P. 986, 12 L. R. A., N. S., 394, 121 Am. St. Rep. 277, 13 Ann. Cas. 450.

The third situation is where the property may have a lawful use or may be kept for a purpose not unlawful. In such cases it is subject to forfeiture and destruction only upon proof of its unlawful use or purpose. Such are the uniform holdings under statutes such as ours, which is directed at property *"used or kept for the purpose of playing for money, or for tokens redeemable in money, at any of the games mentioned in the chapter"*, all of which are games generally known as gambling games. (Italics added.) In Massachuttes the statute authorized the seizure of other property found in a place being used for gambling. The court held that under the statute, in the absence of a showing that the property so seized was unlawfully used or intended for unlawful use it must be delivered to the owner. *Com.* v. *Gaming Implements,* 155 Mass. 165, 29 N. E. 468; *Com.* v. *Coffee,* 9 Gray, Mass., 139, 140; *State* v. *May,* 20 Iowa 305. In *State* v. *Derry,* 171 Ind. 18, 85 N. E. 765, 768, 131 Am. St. Rep. 237, construing the statute of that state the court said: "By these statutes we note: First, that the property in controversy could have been legally seized by a search warrant only on the ground that the same was kept or used for the purpose of unlawful gaming; and, second, that before the justice has any jurisdiction—that is, any authority to issue the warrant—it was necessary for him to be informed not only that the articles were kept for unlawful gaming, but advised under oath of the nature of the offense that had been committed by their use."

The possession and use of innocent things are under the protection of the law; and to justify a search and seizure of them, the state must allege and show their unlawful use, actual or designed. And in the final disposition of goods, property seized, the primary question is the purpose for which they were kept, or their actual use before the seizure. And this is a question for the decision of a court, one with authority to fully and finally determine whether the articles had been kept or used for an illegal purpose; that is to say, a court of criminal jurisdiction with power to enforce the penalty of forfeiture if guilty, or to restore the property to the owner if innocent.

It is the employment of things as a means of accomplishing unlawful acts, and not the things themselves, that our statute condemns, and neither ministerial officers nor courts can put them under legal condemnation or deprive them of their characteristics as property, upon mere view of them. *Hemenway & Moser Co.* v. *Funk,* 100 Utah 72, 106 P. 2d 779. The statutes also prescribe two methods by which proceedings against guilty property may be instituted and conducted. One is under Chapter 54 of Title 105, dealing with search warrants; the other under Title 64 dealing with abatement of nuisances. Can the proceedings of the justice and the sheriff which led to the institution of this action be upheld under either procedure? Even a casual inspection reveals that neither the purported affidavit filed before the justice, nor the purported writ of attachment conforms to or complies with the provisions of the statute. A search warrant may not issue except upon a written deposition taken and subscribed before the magistrate. 105-54-4, R. S. U. 1933. Such deposition must particularly describe the place to be searched and the person or thing to be seized (105-54-3, R. S. U. 1933), and the facts tending to establish the grounds of the application or the grounds of probable cause for believing they exist. The deposition out of which this action grew contains none of these things, states no facts, and describes no place, property, or thing. It is wholly lacking in each and every requirement.

The warrant is as faulty on its face as the deposition. The statute sets forth the form of the warrant, and requires that the warrant show the names of every person whose deposition was taken as a basis for the warrant; the grounds for the application stated in the affidavit (105-54-7) ; and whether it is to be served in the daytime or nighttime. 105-54-11. None of these matters are shown in the warrant. It therefore is not fair on its face and afforded no justification for the sheriff to seize the property. The importance of observing the statutory requirements in the affidavit or deposition and in the warrant is evidenced by the terms of Section 105-54-17, providing that the grounds on which the warrant was issued may be controverted, and Section 105-54-21, making it a misdemeanor to procure a search warrant without probable cause. Who could controvert the statements in this deposition? How could it be controverted? To ask the question is to answer it.

What are the necessary requirements of an action in rem to secure a decree of forfeiture of the property, where it is not before the court in a criminal proceeding against the owner or operator? The first requirement is the filing of an information in a proper court. This information, which is like a complaint in civil actions must contain clear and unequivocal averments of the seizure, the date and place of seizure; the name or official designation of the person making the seizure; the jurisdiction of the court over the thing seized; the right of complainant to the thing; the offense done in, by, or with the thing so as to clearly establish the jus in re, and the description of the thing itself, and the owner if known. The charge of guilt against the thing must be certain. It must be alleged to have been a gambling device forfeited by reason of some use made of it. The offense for which the thing is forfeited must be clearly stated for the decree must be in accordance with the allegations, and the necessary proof cannot be allowed without such allegations. The *Hoppet* v. *United States,* 7 Cranch 389, 3 L. Ed. 380; The *Caroline* v. *United States,* 7 Cranch 496, 3 L. Ed.

417; Waples Proceeding in Rem, p. 81. No decree can be based upon a libel that is defective in essential matters. The Mary Ann, 8 Wheat. 380, 5 L. Ed. 641. No contention can be made that the action before the justice can by even the most specious arguments or bald declarations be a proceeding in rem.

May the proceedings be upheld under Title 64, R. S. U. 1933, relating to nuisances? That title provides for the institution of an action in equity, in the name of the State of Utah, upon the relation of a citizen, to perpetually enjoin the nuisance, and the owner or person conducting the same. Upon presentation of a complaint alleging the nuisance exists, at least 3 days' notice must be given and during which time a temporary injunction may issue. Upon hearing, if the existence of the nuisance is established, an order of abatement issues as part of the judgment for the removal from the building of the equipment, apparatus, and paraphernalia therein. The case before the magistrate is not a suit in equity for abatement of nuisance. Under these statutes the action before the justice would also fail.

It seems therefore that the entire proceedings before the justice and the seizure of the property by the sheriff were without legal authority, null and void, and the justice was without jurisdiction to act in the matter of conducting the attempted hearing and to enter any decree of forfeiture or order of destruction.

MOFFAT, Chief Justice (concurring in dissent).

I concur in the views expressed by Mr. Justice LARSON in his dissenting opinion.